Colton *et al. v.* Vandervolgen *et al.*

No. 7403.

COLTON ET AL. *v.* VANDERVOLGEN ET AL.

CONTRACT.—*Construction.—Set-Off.—Mortgage.—Evidence of Contemporaneous Verbal Agreement.*—A written contract was as follows : " There is due to C. W. Colton the sum of $3,001.25, with interest at 6 per cent per annum from date. The above amount to be paid in such sums and to such parties as he may designate; $1,140.79 is to be retained" by the undersigned, " to protect them against a mortgage binding the flour-mill lease for the above amount."

*Held,* in an action thereon, that this was a promise to pay Colton or order, the beneficial interest being in him, and did not impose any obligation to discharge the mortgage.

*Held,* also, that it was subject to set-off, as any other obligation to pay money.

*Held,* also, that a contemporaneous verbal agreement to pay the mortgage was not admissible.

WITNESS.—*Malice.*—Evidence that an adverse witness holds malice or ill-will against the party against whom he testifies is admissible, though he be a co-party, and his evidence tend to fix a liability upon himself.

PRACTICE.—*Reopening Case.—Discretion of Court.*—It is in the discretion of the court to permit additional evidence, after the evidence has been closed, and only in case of its abuse or injustice will the exercise of this discretion be reviewed.

From the Carroll Circuit Court.

*J. Applegate* and *J. F. McHugh,* for appellants.

*L. B. Sims* and *D. P. Baldwin,* for appellees.

ELLIOTT, J.—The complaint is founded upon a written instrument which reads thus :

"PITTSBURGH, IND., February 6th, 1866.

"There is due to C. W. Colton the sum of three thousand one and $\frac{25}{100}$ dollars, with interest at six per cent. per annum from date. The above amount to be paid in such sums and to such parties as he may designate ; eleven hundred and forty and $\frac{79}{100}$ dollars is to be retained in the hands of Vandervolgen, Fisher & Morrow to protect them against a mortgage binding the flour-mill lease for the above amount.

(Signed) " VANDERVOLGEN, FISHER & MORROW."

This obligation was transferred by a written assignment to

George W. Colton, who instituted the action. After the filing of the complaint George W. Day came into court asking to be made a party, alleging that C. W. Colton, the obligee named in the instrument, agreed to pay a firm of which he, Day, was a member, the sum of $829.29; and that the obligee, for the purpose of satisfying this debt, directed that payment of the amount thereof should be made to Day. The obligors, here the appellees, answered in three paragraphs. The first is the general denial, the second a verified plea of *non est factum,* and the third is a plea of set-off. A cross complaint in two paragraphs was also filed by them, which we regard as substantially alike, and as pleading a payment of the obligation, while owned and held by the obligee and before notice of assignment, and praying for its cancellation. The principal question in the case is as to the character and effect of the instrument sued on.

It is not a promise to pay Day & Matlock, the firm represented by Day, any sum of money whatever, and is not, therefore, a promise for their benefit and capable of enforcement by them. No third person could claim any right to its benefit until designated as a beneficiary by the obligee. The promise contained in the instrument sued on is made to the obligee, and not to any third person. The language employed gives the instrument substantially the same meaning as if the ordinary phrase " or order " had been used. The promise is not at all like those found in deeds covenanting for the payment of a specific and designated encumbrance; it is no more than a mere general undertaking to pay money as the obligee may direct.

The clause providing that the obligors may retain $1,140.-79, to protect them against a mortgage binding the mill, does not contain a promise to pay that mortgage. This provision of the instrument confers a right to withhold the money; it creates no obligation to pay the encumbrance. The stipulation is for the benefit of the obligors, not for that of the mortgagees. It confers no rights at all upon the latter, and is a

provision for the exclusive benefit of the obligors, and one which they were at liberty to renounce at pleasure.

The cross complaint of Day does not aver that the obligors had undertaken to pay the mortgage held by Day & Matlock, nor does it aver that anything at all remained unpaid when the obligee directed the obligors to pay the mortgage. It is quite clear that the direction to pay would confer no right if, at the time it was given, the full amount of the note had been paid, or if the obligors had in good faith acquired defences to the instrument. It was not enough for the cross complainant to show that he had acquired rights prior to the alleged assignment; it was also necessary for him to show that some part, at least, of the sum stated in the instrument remained unpaid.

We do not regard the instrument as prohibiting the obligors from acquiring a valid set-off. The promise is not, as we have seen, to pay a third person a specific debt, but is a general undertaking to pay as the obligee may order or direct, and until some act was done fixing the right of third persons as beneficiaries, the whole beneficial interest remained in him; rights acquired against him while the owner of the entire interest could not be divested by subsequent acts. We think it probable that the appellees might have acquired a set-off against any part of the debt evidenced by the instrument, but are quite clear that such a right might be acquired as to the sum it is provided they should retain for their protection against the mortgage. This stipulation for their benefit was one which they might renounce and discharge their indebtedness by the acquisition of valid claims against the obligee.

There is, as we have said, no averment in the cross complaint of Day that there was any agreement or undertaking on the part of appellees to pay the mortgage executed to Day & Matlock, and for this reason, if for no other, evidence of such an agreement would have been incompetent. The theory upon which Day's pleading proceeds is that the instrument creates a right of action in his favor, and he can not shift his ground and rely upon a distinct and different theory. Hav-

ing declared on a written instrument he can not recover on a parol agreement of an altogether different character.

It was proper to permit the appellees to prove that the obligee had directed them not to pay the claim of Day & Matlock. It may be true, as the burden was on the appellants to prove an order in their favor, that it was unnecessary for appellees to prove an order to the contrary; but, however this may be, there was no error of which the former can rightfully complain.

The legal effect of an instrument sued on can not be varied by evidence of the unexpressed understanding of the parties. The instrument is to be construed by the court, and in construing it regard is to be had to the language employed, without reference to any secret or unexpressed understanding of the parties.

Where an instrument embodies the agreement of the parties it speaks for them, and, in the absence of fraud or mistake, the language used in it measures and declares their rights. As we have seen, the instrument sued on does not, on its face, confer any right of action upon Day & Matlock, and it was not competent to prove by parol a contemporaneous verbal agreement vesting in them a right of action. It was competent for them to prove that the obligor had designated them as persons to whom payment should be made, but not to prove a verbal contemporaneous agreement that it was the understanding of the parties that the instrument should have a meaning different from that which its language imports.

Day & Matlock had no such interest in the obligation sued on as entitled them to contest the right of the obligors to set up claims acquired by them against the original holder of it. The debt evidenced by the instrument was due to the obligee; he was the sole creditor until some other person had acquired an interest according to its provisions. Day had no right to contest the question of the right of the obligors to plead and prove a set-off, until he had shown some act vesting in him a

right of action on the contract made by the appellees with the obligee.

It is proper to show that a witness entertains malice or ill-will towards the party against whom he testifies. This is so although the witness may be one of several who are jointly sued. It was proper in this case to show the hostility of Morrow towards those with whom he had at one time been in partnership, and whom, as there was evidence tending to prove, he had unjustly and without authority involved in a heavy liability. It was right to put the jury in full possession of all the facts and let them judge of his credibility as a witness. It can not be said as matter of law that a man who is swearing against himself as well as others may not be willing to inflict loss upon himself, for the purpose of revenge, or for the gratification of malice. Sacred history affords a notable example of the willingness of a man to bring death upon himself in order to punish his enemies.

· We can not say that the court abused the discretion vested in it in permitting the evidence to be reopened after appellants had given their rebutting evidence. Such matters are much in the discretion of the trial court, and it is only where it appears that injustice has been done, or the discretion abused, that the appellate court will interfere.

Taking all the instructions of the court upon the subject of the construction of the contract, we think they express the law correctly. George W. Colton had no right in the instrument until after the assignment to him, and he clearly can not complain of what was done before notice of assignment. Day has no right to complain of anything that was done prior to the acquisition of rights by the firm which he represented. No man can have an action until some right has been invaded, and what was done before a right was acquired can not be an invasion.

We think that the instrument sued on did authorize the obligee to require the money due upon it to be paid to himself. He retained the right to direct payment to any person

he chose, and this gave him an undoubted right to name himself, even if that ceremony had been necessary. It is a mistake to suppose that the promise created any trust for the benefit of Day & Matlock, or anybody else; there was neither a trust nor a *cestui que trust.* The instrument recites that the money is due C. W. Colton, the obligation is executed directly to him, and in him was the whole legal and beneficial interest, with a right to direct payment to such persons as he should designate. This right of designation did not strip the obligors of any rights of set-off as to the amount which it was agreed they should retain for their protection against the mortgage referred to in the obligation. As the controversy was narrowed to the right of set-off against the sum retained under the clause just referred to, it was proper to instruct the jury that claims acquired before assignment were valid set-offs.

The verdict is clearly right on the evidence.

Judgment affirmed.